UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNELLE MAJORS,

    Plaintiff,

v.                                                    Case No. 8:19-cv-2934-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case remanded.

I.

The Plaintiff was born in 1970, has some college education, and has past relevant work experience as a corrections officer. (R. 26, 42). The Plaintiff applied for DIB and SSI in February and May 2017, respectively, alleging disability as of March

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

2015 due to fibromyalgia, major depression, panic attacks, carpal tunnel syndrome, chronic recurrent anxiety, attention deficit hyperactivity disorder (ADHD), severe post-traumatic stress disorder (PTSD), and "brain fog/short term memory loss[ ]." (R. 131, 147, 162–63). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 145, 161, 181, 200).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in June 2019. (R. 38–63, 241). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In a decision issued in July 2019, the ALJ determined that the Plaintiff: (1) met the insured status requirements through the end of December 2020 and had not engaged in any substantial gainful activity since her alleged onset dates in February and May 2017; (2) had the severe impairments of depression, fibromyalgia, obesity, carpal tunnel syndrome, and PTSD; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, subject to certain exertional and nonexertional limitations, including—of relevance here—a restriction to understanding, remembering, and carrying out simple routine tasks with occasional interaction with supervisors and the public; and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the

national economy. (R. 18–28). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 28).

The Appeals Council denied the Plaintiff's request for review. (R. 1–3). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court [accords] deference to the [Commissioner's] factual findings, no such deference is given to [her] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

### III.

The Plaintiff's sole challenge on appeal is that the ALJ improperly discounted the opinion of her psychiatrist, Dr. Melissa Fickey. Upon a thorough review of the record and the parties' submissions, the Court finds that reversal and remand is warranted.

As noted above, at step four of the sequential evaluation process, the ALJ must determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including

5

[the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). In rendering this assessment, an ALJ must take into account: (1) whether the medical provider at issue has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).[4] While an ALJ is required to

---

[4] Although the regulations governing an ALJ's assessment of opinion evidence were amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Here, as noted above, the Plaintiff submitted her DIB application in February 2017 and her SSI application in May 2017. The ALJ heard both claims together at the hearing (R. 265) and cited the older version of the regulations in his analysis. (R. 23). Neither party challenges the ALJ's reliance on the older regulation in evaluating the SSI application, even though it was filed after the effective date of the new regulation. Nor do they argue that the new regulation would lead to a different result. As a result, they waive any objection they may have on the matter. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (per curiam); *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x. 882, 885 (11th Cir. 2011) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)); *Sumlin v. Saul*, 2020 WL 7232240, at *4 n.6 (M.D. Fla. Nov. 23, 2020) (citing *Simpson*, 423 F. App'x at 885), *report and recommendation adopted*, 2020 WL 7229746 (M.D. Fla. Dec. 8, 2020).

consider each of these factors, he is not obligated to address them explicitly in his decision. *Lawton*, 431 F. App'x at 833.

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(a)(2), (c)(1)–(2); *id.* at §§ 416.927(c)(1)–(2)). A treating physician's opinion is accorded the most deference because there is a greater likelihood that such a provider will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ must give the opinion of a treating physician substantial or considerable weight unless the ALJ clearly articulates reasons—supported by substantial evidence—that establish "good cause" for discounting that opinion. *Hargress*, 883 F.3d at 1305–06; *Phillips*, 357 F.3d at 1241. "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted).

Unlike a treating physician, the opinion of a non-treating, examining physician "[i]s not entitled to great weight." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)). And the opinion of a non-treating, non-examining physician is

7

generally afforded the least deference. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam). In the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)); *accord Sharfarz*, 825 F.2d at 280 ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (citation omitted).

In this case, the Plaintiff first sought treatment from Dr. Fickey in November 2017. (R. 2544). During her initial visit, the Plaintiff reported that she experienced panic attacks "about a few times a week" and was forgetful and easily distracted. (R. 2544). While the Plaintiff denied any current suicidal ideations, she admitted that she frequently had such thoughts in the past and that she had attempted suicide in November 2016 and March 2017, both of which resulted in her being hospitalized. (R. 2544). Dr. Fickey diagnosed the Plaintiff with PTSD, ADHD, and major depressive disorder. (R. 2548).

Following her first appointment, the Plaintiff continued treatment at Dr. Fickey's office with an advanced registered nurse practitioner (ARNP), Sarah Cash, who the Plaintiff saw eight times between January 2018 and April 2019. (R. 2550–80). Both Dr. Fickey and Ms. Cash signed the Plaintiff's post-appointment treatment notes, *id.*, as well as a November 21, 2018, medical source statement that is central to the Plaintiff's challenge.[5] (R. 2137–42).

---

[5] Because the ALJ and the parties refer to this statement as belonging to Dr. Fickey, the Court does so as well.

8

In that medical source statement, Dr. Fickey opined that the Plaintiff had extreme limitations[6] in her ability to (1) engage in activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) complete a normal workday and a normal work week without interruption(s) from psychologically based symptoms; (3) perform at a consistent pace with a standard number and duration of rest periods; and (4) travel in unfamiliar places or use public transportation. *Id.* Dr. Fickey also found that the Plaintiff had marked limitations[7] in her capacity to (1) maintain attention and concentration for extended periods of time; (2) work in coordination with or in proximity to others without being distracted by them; (3) interact appropriately with the general public; and (4) get along with co-workers or peers without distracting them or exhibiting behavioral extremes. *Id.* Dr. Fickey additionally determined that the Plaintiff had moderate limitations in certain other areas, such as the capacity to ask simple questions, request assistance, set realistic goals, or make plans independently of others. *Id.* And, finally, Dr. Fickey concluded that the Plaintiff would likely have three or more absences from work in an average month due to her mental symptoms/treatment. *Id.*

In his decision, the ALJ discussed Dr. Fickey's medical opinion at step four of his analysis and assigned it "little weight." (R. 26). In particular, the ALJ stated:

> Melissa Fickey, MD, opined on November 21, 2018 that the claimant had PTSD, ADHD, and a major depressive disorder. As a result, she

---

[6] Extreme limitations are defined in the statement as ones where the Plaintiff had "no useful ability to function in th[e designated] area." (R. 2137).
[7] Moderate limitations are defined in the statement as ones where the Plaintiff "generally [could not] perform satisfactorily in th[e designated] area." (R. 2137).

9

      assessed that the claimant had moderate limitations in ability to set realistic goals. She noted marked limitations in attention and concentration, working in coordination with others, and interacting appropriately with the public. Dr. Fickey found that the claimant had extreme limitations in [her] ability to travel to unfamiliar places, maintain a schedule, and complete a normal workday or workweek. She also opined that the claimant would miss three days of work per month or more. Dr. Fickey's assessment is given little weight. The evidence does support a limitation in social interaction, especially with the public. The evidence does not support a finding of marked limitation in attention and concentration. There is no evidence to support that the claimant would have difficulty completing a normal workday or workweek. There is no evidence to support the determination that the claimant would miss three or more days of work per month.

(R. 26–27) (citation omitted).

      Claiming that Dr. Fickey should be viewed as her treating psychiatrist, the Plaintiff now argues that the ALJ failed to set forth clear and adequately supported reasons for discounting Dr. Fickey's opinions in her November 2018 medical source statement. (Doc. 22 at 14–18). The Commissioner counters that Dr. Fickey is not a treating source and that the ALJ provided good cause for largely rejecting her assessments in any event. (Doc. 22 at 18–26). By the Court's view, the Plaintiff has the better argument, albeit for slightly different reasons.

      The Court starts by noting there is a fair amount of case authority for the proposition that, under certain circumstances, a physician who employs an arrangement akin to the one Dr. Fickey utilized with Ms. Cash is properly considered to be a treating source. *See, e.g., Rieara v. Comm'r of Soc. Sec.*, 2020 WL 4936979, at *3 n.7 (M.D. Fla. Aug. 24, 2020) ("When a treating physician signs a report prepared by a nurse practitioner (an 'other source' whose opinions are not presumptively entitled

to controlling weight), the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views") (quoting *Viverito v. Colvin*, 2016 WL 755633, at *13 (E.D.N.Y. Feb. 25, 2016)); *Burnett v. Soc. Sec. Admin.*, 2021 WL 970494, at *5 n.4 (M.D. Tenn. Feb. 25, 2021) (recognizing that a number of courts have reasoned that if an otherwise unacceptable medical source acts as part of a treatment team and an acceptable medical source has "signed off" on the former's findings, those conclusions should be considered as the latter's opinion) (gathering authority), *report and recommendation adopted*, 2021 WL 964054 (M.D. Tenn. Mar. 15, 2021)); *Toro v. Comm'r of Soc. Sec.*, 2017 WL 413939, at *4 (N.D. Ohio Jan. 31, 2017) ("[C]ourts recognize that a functional opinion prepared by a non-physician member of the treatment team but later signed by the physician[ ] is considered to be the view of the physician as an acceptable treating source, in that [s]he is deemed to have 'adopted' as h[er] own a report that may have been prepared by an otherwise non-acceptable source.") (citation omitted); *Perrigin v. Colvin*, 2016 WL 7256952, at *3–4 (M.D. Ala. Dec. 15, 2016) (finding that a supervising doctor signing a nurse practitioner's notes and initialing the medical source statement constituted "his approval of its contents" and was thus sufficient to make the doctor a medical source warranting substantial weight) (citing *King v. Astrue*, 493 F. Supp. 2d 1232 (S.D. Ala. 2007)); *Robinson v. Comm'r of Soc. Sec.*, 2015 WL 5768483, at *3 (S.D. Ohio Sept. 30, 2015) (finding that, for purposes of the treating physician rule, the SSA "does not distinguish between opinions filled out and signed by a treating [physician] and

11

opinions filled out by a [therapist] and then signed—thus adopted—by a treating [physician]") (citing Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

The problem with the ALJ's decision is that it is not at all clear whether he found Dr. Fickey's arrangement with Ms. Cash to be sufficiently similar to those described in the above cases, such that he deemed Dr. Fickey to be the Plaintiff's treating psychiatrist. As an example of the ALJ's lack of clarity on the matter, at step four, he cited the regulatory provisions that include the treating physician standard (R. 23) (citing 20 C.F.R. §§ 404.1527, 416.927) and then stated later in his analysis that, "[a]s for the opinion evidence, [he] considered *treating source*, consultative examiner, and state agency opinions" (R. 25) (emphasis added)). The ALJ then went on to review the assessments made by the Plaintiff's social worker, Carol Kummer, who he described as "not an acceptable medical source;" a consultative psychological examiner, Dr. Jason Neufeld, who conducted a single evaluation of the Plaintiff in August 2017; a physician, Dr. Sarah Gish, who "only had two encounters with the [Plaintiff]" in March 2017 (and who is not even identified by name in the parties' joint memorandum); various "state agency medical consultants;" and Dr. Fickey. (R. 25–26). The ALJ also attributed the opinions set forth in the November 2018 medical source statement to Dr. Fickey, not Ms. Cash. (R. 25–26).

One could fairly infer from the above summary of the ALJ's discussion of the opinion evidence that he considered Dr. Fickey to be a "treating source." Such an inference, however, would be just that—an inference. It is not a deduction that can be drawn with any certainty. And therein lies the rub. It is well settled that a court must

be able to meaningfully review an ALJ's reasoning so that it can ascertain whether the ALJ has applied the correct legal framework. An ALJ's failure to cross this threshold requires remand. *See Schink*, 935 F.3d at 1269 ("[O]ur precedent holds [that an] ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right.") (quoting *Keeton*, 21 F.3d at 1066); *Jamison v. Bowen*, 814 F.2d 585, 588–89 (11th Cir. 1987) (providing that remand for clarification is necessary where the court cannot discern whether the ALJ followed the statutory requirements and related regulations).

Notwithstanding the government's contentions to the contrary, the murkiness surrounding the issue of whether the ALJ viewed Dr. Fickey as the Plaintiff's treating psychiatrist is hardly without significance. This is because, by the Court's lights, the ALJ's evaluation of Dr. Fickey's opinions does not satisfy the treating physician standard. As referenced above, the only reasons the ALJ provided in according diminished weight to Dr. Fickey's findings were that the evidence did not support the doctor's determination that the Plaintiff had marked impairments in attention and concentration, that the Plaintiff would have difficulty completing a normal workday or work week, and that the Plaintiff would miss three or more days of work per month. (R. 25–26). As numerous courts have found, such conclusory statements, without more, do not constitute good cause for discounting a treating source's opinion. *See, e.g.*, *Hubbell-Canamucio v. Comm'r of Soc. Sec.*, 2016 WL 944262, at *4 (M.D. Fla. Mar. 14, 2016) (finding conclusory statements by an ALJ that a treating doctor's opinion is inconsistent with or not supported by the record to be insufficient to show good cause

for rejecting the treating doctor's opinion unless the ALJ articulates adequate factual support) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)); *Corron v. Comm'r of Soc. Sec.*, 2014 WL 235472, at *6–7 (M.D. Fla. Jan. 22, 2014) (rejecting the ALJ's conclusion that the treating doctor's opinion was "inconsistent with the evidence of record when considered in its entirety" because the ALJ failed to articulate evidence supporting that reason) (citations omitted) (collecting cases); *Freeman v. Comm'r of Soc. Sec.*, 2013 WL 6244527, at *7 (M.D. Fla. Dec. 3, 2013) ("Although the ALJ used the triggering language for the 'good cause' exception, his conclusions [were] unsubstantiated by reference to specific evidence in the record, and provide[d] the reviewing Court with little guidance in determining whether the findings [were] supported by substantial evidence.") (citations omitted); *Anderson v. Astrue*, 2013 WL 593754, at *5 (M.D. Fla. Feb. 15, 2013) (concluding that the ALJ must do more than recite a good cause reason to reject a treating physician's opinion and must also articulate evidence supportive of that reason, as well as cite authority for same) (citations omitted).

In addition to being conclusory, the ALJ's substantial rejection of Dr. Fickey's opinions is not buttressed by sufficient evidence. *Phillips*, 357 F.3d at 1241 (noting that an ALJ's reasons for giving minimal deference to a treating physician's opinion must be adequately bolstered by the evidence of record). This is particularly true with respect to Dr. Fickey's determination that the Plaintiff was not able to complete a normal workday or a normal workweek. By way of example, the Plaintiff advised Dr. Fickey at her first appointment that she suffered from panic attacks "a few times per

week" (R. 2544), and that she was Baker Acted in May 2018 as a result of worsening depression and suicidal thoughts (R. 2451). Consistent with her reports to Dr. Fickey, the Plaintiff testified at the hearing that she experienced panic attacks "three to five times a week," each of which typically lasted for thirty minutes. (R. 55). Further, the Plaintiff's social worker, Ms. Kummer, opined that the Plaintiff was markedly limited in her capacity to finish a workday or workweek. (R. 938). Although the ALJ assigned "little weight" to Ms. Kummer's assessments, he did not address the fact that Dr. Fickey—who the ALJ arguably viewed as the Plaintiff's treating psychiatrist—and Ms. Kummer reached a similar, if not the same, conclusion regarding the Plaintiff's limitations.

In her memorandum, the Commissioner attempts to justify the ALJ's discounting of Dr. Fickey's opinions by arguing that those opinions were based on the Plaintiff's subjective complaints as opposed to clinical findings, and because Dr. Fickey's first examination of the Plaintiff does not support the restrictions Dr. Fickey identified. (Doc. 22 at 20–23). The Court, however, can only rely on what the ALJ said, not on a post-hoc rationalization offered by the Commissioner on appeal. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)). The Commissioner's contention also conflicts with Dr. Fickey's November 2018 medical source statement, which predicates the findings made therein on the "Patient['s] Subjective Statements" *and* "Clinical Observations (i.e., treatment

15

history)." (R. 2141). It is additionally inconsistent with the ALJ's rationale for largely rejecting Dr. Fickey's opinions, which was that they were not generally buttressed by the evidence of record, rather than Dr. Fickey's medical documentation in particular. *Schink*, 935 F.3d at 1259.

The Court likewise does not find convincing the Commissioner's apparent suggestion that the ALJ's decision to afford great weight to the opinion of Dr. Neufeld—a one-time consultative examiner—supports the ALJ's determination to disregard Dr. Fickey's assessments. (Doc. 22 at 23) (citing R. 1135–41). The ALJ did not cite Dr. Neufeld's opinion as one of the grounds for disagreeing with Dr. Fickey's findings and, for the reasons set forth above, Dr. Neufeld's opinion is therefore of no help to the Commissioner here.

To the extent the ALJ's failure to provide clearly articulated and sufficiently supported reasons for according "little weight" to Dr. Fickey's opinions is subject to a harmless error analysis, that standard is also not met here. *See Freeman v. Comm'r of Soc. Sec.*, 2021 WL 665976, at *2 (M.D. Fla. Feb. 19, 2021) (noting that an ALJ's error in articulating weight assigned to a treating physician's opinion may not always be fatal) (citing *Hanback v. Comm'r, Soc. Sec. Admin.*, 581 F. App'x 840, 841 (11th Cir. 2014) (per curiam)); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("We may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'")

(citation omitted).[8] At the hearing, both the ALJ and Plaintiff's counsel posed a series of hypotheticals to the VE to establish whether someone with the Plaintiff's limitations as determined by Dr. Fickey—including the need to miss work three or more days per month—would be able to secure employment in the national economy:

> ALJ: Now, for my second hypothetical, keep the same as hypothetical number one. However, this person would have two unexcused absences per month. Any work for this individual?
>
> VE: There would not be.
>
> *  *  *
>
> Plaintiff's Attorney: The individual would be unable to complete a normal workday and work week without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable . . . number and length of rest periods. It's fair to say that would be disabling. Is that correct?
>
> VE: That would be. Yes.

(R. 59–62). Because the VE found there were no jobs in the national economy which the Plaintiff could perform given the restrictions described in Dr. Fickey's November 2018 medical source statement, including the Plaintiff's need to miss work three or more days per month, the ALJ's failure to clearly articulate and substantiate his decision to discount Dr. Fickey's opinions cannot be considered harmless. As such, reversal and remand are required.

---

[8] As one court has observed, the Eleventh Circuit has not applied a "harmless-error analysis to an ALJ's failure to consider a treating source's opinion" but has issued "multiple unpublished opinions that apply [a] harmless-error analysis to the failure to mention or weigh a treating source's opinion." *Simmons v. Saul*, 2020 WL 1235614, at *4–5 (N.D. Ala. Mar. 10, 2020) (citations omitted).

17

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the matter of attorneys' fees and costs pending a further motion pursuant to Local Rule 7.01.

SO ORDERED in Tampa, Florida, this 3rd day of September 2021.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record